UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
|  | ) |  |
| GEORGE WEBB SWEIGERT | ) | Civil Action   1:17-cv-02330-(RC) |
| Plaintiff(s) | ) | Filed   2/4/2017 |
| vs. | ) | Judge Rudolph Contreras |
| JOHN PODESTA, et al. | ) |  |
| Defendant(s) | ) |  |

RESPONSE IN OPPOSITION TO DEFENDANT HASEEB RANA'S

MOTION TO DISMISS

1)    With regard to the Defendant Haseeb Rana's Motion to Dismiss filed on December 18th, 2017 , I would like to outline the fundamental question before the court in the conspiracy to commit fraud before addressing the individual motions to dismiss. Quite simply, the fundamental question before the court is "did a conspiracy to commit fraud exist between Hillary For America, the Democratic National Committee, Fusion GPS, the Podesta Group, to commit fraud against the America people".  In the words of the Chairman that took over for these principal conspirators of the Democratic National Committee, Donna Brazille, the process was "rigged", with a secret Joint Funding Agreement signed in late September of 2015,  which allowed the sweeping of donations intended for Bernie Sanders and key recruiter and donor data in an system known as NGP/VAN to be swept up to Hillary For America from DNC Servers as frequently as

once per hour.  Chairman of Hillary for America, John Podesta, Vice Chairwoman of Hillary for America, Huma Abedin, and Chairwoman of the DNC, Debbie Wasserman Schultz were fully aware these sweeps of donations intend for Bernie Sanders and critical recruiting and donation data were being swept up on an hourly basis from DNC headquarters on Capitol Street in Washington, DC.  Donors and volunteers for Bernie Sanders and progressive Congressional candidates who supported Bernie Sanders policies had no idea their donations were instead going directly to Hillary For America and Hillary For America hand picked Congressional candidates.

Individual defenses up to this point have not addressed the fundamental question of conspiracy to commit fraud at all, but instead have tried to divide the Court ability to see the simple conspiracy for what it is by dividing to the Court's attention to corner cases of distantly related case law.  Four key Defendants have simply chosen to avoid service to avoid the question all together.  The four key tests for fraud have been fully satisfied in the initial complaint along with the requirements for a RICO conspiracy which binds all defendants as a whole in this case.  One - false statements were made - in essence donors were convinced they were donating to Bernie Sanders and Congressional candidates which supported Sander progressive agenda, two - the key conspirators knew these representations to be false,, three - the conspirators knew the public and donors would rely on these false representations in making $228,000,000 in donations to Bernie Sanders, and four - there was a clear injury in fact from this fraud.  With recent disclosures that the FBI may have assisted the DNC to hire Fusion GPS to hire foreign operatives to prepare a several "salacious and unreliable" dossiers in the

words of then FBI Directors James Comey, for submission of four FISA applications on this Court. The Plaintiff now believes that these conspirators has already committed four act of Fraud on the Court through confederate, bad actors at the FBI and DOJ. We are more convinced than ever that discovery will lead to clear and convincing evidence of this conspiracy to commit fraud. *Haines v. Kerne (1972)* states a pro se has more opportunity for discovery given the inequality of status between the Plaintiff and the large Corporate and Government entities in the Defense.

*Courts are guided by the principle that pro se plaintiffs are usually subjected to less exacting standards than plaintiffs who are represented by attorneys. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594 (1972). "[D]istrict courts have . . . strong incentives for ensuring adequate representation for pro se plaintiffs." Ficken v. Alvarez, 331 U.S. App. D.C. 37, 146 7 F.3d 978, 981 (D.C. Cir. 1998). However, this enduring legal principal does not relieve an unrepresented plaintiff of the burden of establishing her prima facie case. See, e.g., Moore v. Agency for Int'l Dev., 301 U.S. App. D.C. 327, 994 F.2d 874, 876 (D.C. Cir. 1993).*

In addition, upon information and believe from several news articles, Defendant Abedin may have forward key passwords to Classified State Dept systems such as PRISM and Palantir to an insecure Yahoo email account after several well publicized attacks occured, making this crucial system access available to Russian hackers.

*Huma Abedin Forwarded Top Secret Passwords To Yahoo Account Hacked By Russian With Odd Clinton Connection*

https://www.zerohedge.com/news/2018-01-02/huma-abedin-forwarded-top-secret-passwords-yahoo-account-hacked-russian-odd-clinton

When these potential leaks of national security passwords to State Department are leaked to foreign actors, as host of pay to play scenarios were enabled with reciprocal donations being made to Hillary For America.

*Huma Abedin's Forwarded Passwords and Trump's Call for Jail*
*President's blast of Clinton aide follows disclosure that in 2009, she forwarded State Department login instructions to a personal email account*

https://www.wsj.com/articles/trump-calls-for-jail-for-clinton-aide-over-emailed-passwords-1515015745

2) With particular regard to Defendant Rana's Motion to Dismiss, objections are raised failure to state a cause of action and jurisdiction. Haseeb Rana was the handpicked successor to Imran Awan and Rao Abbas in the House of Representatives for password access to Representative email and documents, three of which sat on key Intelligence and Homeland Security Committees. Upon information and belief, Defendant Haseeb Rana was not properly vetted and had no Classified Security clearance, yet handled Classified documents on a regular basis. Recent FBI reports have cited Classified information moving from Washington, DC and the State Department to Defendant Abedin's Blackberry device and then to her husband's unsecure laptop. FBI reports delineate over 2,100 classified documents being moved from Washington, DC to Hillary For America to Mrs. Abedin's Blackberry device in New York.

[Classified documents among newly released Huma emails found on Weiner's laptop](#)

https://nypost.com/2017/12/29/classified-documents-among-newly-released-huma-abedin-emails-found-on-weiners-laptop/

The Plaintiff alleges this connection was accomplished through the hacking of the Awan Spy Ring in Congress, of which Defendant Hasseb Rana was a key part, and the connection of the DNC servers in Washington, DC to the Hillary For America services in Brooklyn, New York. A clear cause of action is stated by this illegal sweeping of DNC money, data and national secrets to Brooklyn, New York. Jurisdiction is determined by where they original crime took place - South Capitol Street in Washington, DC. Shawn McCluskie, a key aide to Representative Xavier Becerra, has stated he tried to solve the 5,400 unauthorized logins to the Congressional Caucus servers himself rather that call the FBI with these illegal logins by the Defendant Imran Awan began concurrently with the Joint Funding Agreement being signed in October of 2015.

*Becerra Tried To Block Server Admin Over Red Flags, But Logins Continued, With Muted Reaction*

http://dailycaller.com/2017/12/11/becerra-tried-to-block-server-admin-over-red-flags-but-logins-continued-with-muted-reaction/?utm_campaign=atdailycaller&utm_source=Twitter&utm_medium=Social

Objections around Class for the John Doe and Jane Doe Plaintiffs are nullified by the Defendant's efforts to secure representation for this Class of injured Plaintiffs. The Plaintiff has conducted a continuous daily campaign to discovery Plaintiffs in all 435 Congressional Districts of the United States - achieving both numerosity and diversity of Class. Currently, 47,000 subscribes to follow the developing case on the Plaintiffs news channel on YouTube where daily updates to the case are given. Negotiations with counsel base here in Washington DC to represent the injured class are well under way and should be achieved soon for the discovery phase of this civil action.

3) The Plaintiff's Complaint is a derivative of Wilding et al vs Debbie Wasserman Schultz, DNC, 0:2016cv61511 from a year prior in which an Appeals Court has ruled the case can proceed due to sufficient Standing. The key difference with this Complaint is the Plaintiff presents the actual monetary damages and the Plaintiff presents much more evidence of fraud and detrimental reliance on the DNC and Debbie Wasserman Schultz with new evidence that has come to light in the last year.

4) With regard to Standing, a total greater than $228,000,000 was given by Bernie Sanders donors indirectly or directly to the DNC for October 2015 to June 2016. We have now learned from recent disclosures by DNC Chairwoman, Donna Brazille that a secret agreement was made between Hillary For America and the DNC in October of 2015 to secretly sweep funds from the DNC before the first primary was even conducted in New Hampshire. Democratic Party members and Bernie Sanders donors relied on false assurances of a fair primary election cycle by the Defendant Debbie Wasserman Schultz and other DNC leaders. Donors and volunteers detrimentally relied

on these statements that DNC leaders including but not limited to Debbie Wasserman Schultz knew to be false, and this constitutes Fraud.

5) Upon information and belief, Defendant Haseeb Ranahas has been a long term friend of Defendant Imran Awan for a least eight years since Imran was employ at the US House of Representatives since at least 2009. Imran Awan was a key, long time aide to Congresswoman Debbie Wasserman Schultz, the leader of the Democratic Party. The Plaintiff asserts that Defendant Rana would have been made aware of all the Defendants coming to work in the United States Congress from Pakistan. Defendant Rana would have been aware that Defendant Imran Awan made over $160,000 a year without reporting to work every day to Capitol Hill. Defendant Rana would have known the Defendant Imran Awan and his brother, Defendant Abid Awan, who also made over $160,000 a year working for Congress, had been involved in a $1M bankruptcy of Cars International Inc in 2009, a car dealership in Falls Church, Virginia. She would have know Defendant Imran Awan was involved in an IT equipment swindle when Congressional phones were sent directly to his home by CDW-G in February of 2015. Defendant Rana would have know about Defendant Imran Awan's and Defendant Abid Awan's 7,000 illegal logins from October 2015 to August of 2016 into the Democratic Caucus Server, sweeping money and NGP VAN data to Hillary For America. She would have know Abid Awan was banned from the House network access in September 2016 in the Congressional Federal Credit Union investigation. He would have know about the twenty Congressional burglaries on or about the Inauguration in January of 2017. He would have know Defendant Imran Awan, Hina

Alvi, and Jamal Awan were barred from the Congressional network in February 02017 after a false server image was provided by Congressman Becerra to the Capitol Police. He would have know about illegal network access to Congressional servers on April 6th, 2017 by Imran Awan. Defendant Rana may have been aware of the illegal 123@mail.house.gov shared dropbox used by the Defendants which resulted in Terabytes of information flowing to Pakistan. He would have known Defendants Hina Alvi, Abid Awan, Jamal Awan, and Nataliia Sova were also making over $160,000 and not reporting to work on a daily basis. Defendant Rana would have known that he and Defendants Rao Abbas were handpicked surrogates of Imran Awan, working in the US Congress without proper security vetting. Defendant Rana, through numerous Capitol and Fairfax County Police reports, would have know Defendant Imran Awan and the member of this ring ran a classic RICO conspiracy to defraud the US Government and later the donors to the Democratic Party and the Bernie Sanders Campaign.

5) With regard to Defendant Rana's claim there is no injury-in-fact, the Defendant would have been made aware that 7,000 illegal logins were made from October 2015 to August 2016 on the Democratic Caucus Server, holding the email and accounts of 45 Members of the House of Representatives, sweeping donor's money and NGP/VAN donor and volunteer information to Hillary For America.
Consider,

*Becerra Tried To Block Server Admin Over Red Flags, But Logins Continued, With Muted Reaction*

http://dailycaller.com/2017/12/11/becerra-tried-to-block-server-admin-over-red-flags-but-logins-continued-with-muted-reaction/

At no time did Defendant Rana make the public aware of this potential theft of campaign volunteer or contribution information over an eleven month period of time which was her key responsibility of officers of the DNC and Hillary For America. According to FEC record, the Bernie Sanders Campaign raised $228,000,000.

## Fundraising Details

|  | Campaign Committee | Outside Groups | Combined |
|---|---|---|---|
| Total Raised | $228,164,501 | $0 | $228,164,501 |
| Total Spent | $222,709,340 | $0 | $222,709,340 |
| Cash on Hand | $5,473,008 | $0 | $5,473,008 |
| Debts | $449,409 | - | - |
| Date of Report | 12/31/16 | November 27, 2017 | - |

Defendant Rana knew members of the Democratic Party donating to Bernie Sanders were actually having their donations and volunteer information swept to Hillary For America in Brooklyn, New York. These misrepresentations of a fair election process, detrimental reliance on statements party leaders knew to be false, and resulting injury-in-fact constitute Fraud. By not making the public aware of this Fraud, Defendant Rana committed Fraud and breached his fiduciary duty to the American

people, and to members of the Democratic Party, and specifically to donors to the Bernie Sanders campaign.

6) The Plaintiff clearly has standing in that he donated to the Bernie Sanders Campaign three times, and he has added a proviso for other donors the were injured-in-fact in the Class Action provisions of the Complaint. Representation is being secured for these Classes of injured Defendants and will be available before Trial proceedings. In *Sloan vs SEC (1978)*, a Pro See Attorney with only 13 shares of stock successfully contested a Supreme Court case. The Defense has quoted a flurry of distantly related case rather than address this binary fact of Standing or No Standing. With regard to showing Cause and showing Injury-In-Fact, consider the new evidence:

    a) A secret agreement between Hillary For America and the DNC which swept all DNC funds surreptitiously to Hillary For America was not known to contributors to the Bernie Sanders campaign or other Democratic Party contributors.

    b) A secret server was maintained by the Imran Awan and surrogates that was illegally logged into over 7,000 times between October 2015 and May 2016, potentially harvesting critical campaign donor and volunteer information from the NGP/VAN voter engagement system.

    c) In February of 2016, an investigation was triggered for Defendant Imran Awan falsifying procurement documentation from CDW-G and illegally having iPhones and iPad intended for members of the House sent to his home in Lorton,

Virginia. When this fact is coupled with Defendant Imran Awan's long trips out of the country to Pakistan, this introduce the danger than the phones could be compromised with spyware overseas.

d) An investigation into the Congressional Federal Credit Union led to the October 2016 firing of Abid Awan.

e) Following twenty burglaries of Congress that has been attributed widely in the media to the Awans on or about the night of the Inauguration, Imran Awan, Jamal Awan, and Hina Alvi his wife were barred from the Congressional network.

f) In March or April, a backpack belonging to Imran Awan was found in the Rayburn Office Building with hard drives and the laptops of Congresswoman Debbie Wasserman Schultz, in clear violation of the Congressional ban from the network.

g) On March 6th, Hina Alvi, was stopped at Dulles Airport after having $12,000 case on her person, apparently fleeing the country after abrupting pulling her two children out of school.

h) In October of 2017, a secret email account called 123@mail.house.gov to the Congressional network was discovered to still be active. Court records indicate Imran Awan used this email on multiple occasions. This would constitute a clear violation of the Congressional network. The email account, in fact, still may be in use.

i) Now there is strong evidence suggesting Defendant Imran Awan may have been involved in laundering $200 million dollars a month to known terrorist

elements of Hezbollah for a drug ring in northern Virginia through a Cars International Inc. car dealership he owned in Falls Church, Virginia since 2008. Defendant Rana would have known about large money transfers from the Congressional Federal Credit Union, as well as the creation of fake employee account to launder large sums of cash for this operation.

7) The Plaintiff cites a numerous US government investigative reports which support the RICO conspiracy claim of Defendant Imran Awan and surrogates as well requesting local police reports that are germane to this case. Defendant Abedin would have know about these police reports over at least an eight year period, and she did not warn the American people or the member of the Democratic Party these individuals were intimately involved with the IT systems of the DNC.

8) Defendant Rana knew Defendant Imran Awan has been a closely trusted information technology consultant for Defendant Debbie Wasserman Schultz since at least 2006. In May of 2016, wikileaks reveals that ever the closest advisors of Mrs. Schultz did not have her iPad password in the middle of the hotly contested campaign, only Defendant Awan did.

9) The evidence for a RICO conspiracy between Defendants Imran Awan, Abid Awan, Hina Alvi, Nataliia Sova, Rao Abbas, and Haseeb Rana could not be clearer. The claim that a violation of the Computer Fraud and Abuse Act occurred here are equally relevant. Defendant Rana would have been aware of these laws and criminal activities, yet she did nothing to alert the public to these crimes over an eight year period. This

shrugging of critical responsibility constitutes a Breach of Fiduciary Duty in his role as an employee of the House of Representatives.

10) Defendant Rana would have been aware Defendant Imran Awan was not coming to work at Congress every day when he was drawing over $160,000 in salary.

From the words of the Defendant Haseeb Rana's own father, Defendant Haseeb Rana was the hands of the Imran Awan regarding his configuring phone, laptop, and email accounts for members of Congress. Defendant Haseed's stated that Imran made Haseeb "do all the work".

Excerpt from the Daily Caller on June 26, 2017,

http://dailycaller.com/2017/06/26/house-dems-hired-a-fired-mcdonalds-worker-as-their-it-guy/

> With allegedly no-show employees connected to Imran being added to numerous offices, someone had to do the work. Imran enlisted an old high school friend, Haseeb Rana, for this purpose. Haseeb did not respond to TheDCNF's multiple requests for comment.
>
> His father, Tanwir Rana, said Haseeb is a skilled IT professional and "they made him do all the work … After three months, he wanted to leave. We were having a very charged relationship with Imran. [Haseeb] was not satisfied with their behavior."

In a later article by the Daily Caller, Tanwir Rana asserted that Imran Awan had manipulated his son, Defendant Haseeb Rana.

> Imran manipulated a high school buddy, Haseeb Rana, by having him do the work of Imran's relatives — who fellow IT guys said were rarely seen — while earning less money than them, Haseeb's father Tanwir said.
>
> Imran is outgoing and relishes displays of power and influence. "My son is quiet, Imran is the opposite of that. He has pictures of him shaking hands with all the officials," Rana said.

In excerpts from the Daily Caller on June 26, 2017, Tanwir stated his son believed he was directly by Imran Awan.

http://dailycaller.com/2017/06/26/house-dems-hired-a-fired-mcdonalds-worker-as-their-it-guy/

> Tanwir described Imran as having hired Haseeb even though the men are not part of a company and are hired as individual W-2 employees by congressional offices. Members or their chiefs of staff generally make hiring decisions.

11)     The Defense is trying to parse this RICO Conspiracy to shield the conspiracy here.  Imran Awan is already under criminal indictment for bank fraud and conspiracy charges with his wife, Hina Alvi.  The Defense is proffering a minor participant in the conspiracy in hopes of obfuscating the case.

12)     Defendant Imran Awan has not responded to the Plaintiff's numerous attempts to serve Defendant Imran Awan  The Plaintiff has attempted Certified Mail, used a well know process server here in Washington, DC, Same Day Process, and employed an ex law enforcement officer and investigator that spoke with the occupants all four known addresses of the Defendant to attempt Service of the Defendant Imran Awan.  The Defendant in question is currently under the High Intensity Supervision Program of this Court under indictment for Bank Fraud and Conspiracy charges and restricted to an area within 50 miles of this Court.  Upon information and belief, an ex law enforcement officer and investigator, Jennifer Moore, spoke with Imran's brother Omar at the 6314 Thomas Drive location in Springfield, Virginia on December 10th, 2017, and he stated that Imran frequented this location.   Service has been attempted at this address numerous times.  Here is a brief timeline of events of the RICO conspiracy.







13)     Upon information and belief, the Defendant Imran Awan has been the subject of numerous police reports - both for the US Capitol Police and the Fairfax County Police. A simple production of documents with should already be public will quickly establish the RICO Conspiracy on the Computer Fraud and Abuse.

I therefore motion for this Court to deny Defendant Rana's Motion for Dismiss, given the clear Standing, Injury in Fact, Fraud, and Detrimental Reliance on the DNC and its actors. Additionally, I hereby motion the compel these compel these agencies with a Writ of Mandamus to produce all police reports from the Capitol Police and records related to the Defendant Imran Awan in an unredacted form. This Court can then begin the Discovery process of Requests For Admission, Interrogatories, and Depositions on a firm foundation of fact in the interest of judicial economy for this Court.

Respectfully submitted,


/s/George Webb Sweigert, Pro Se

8850 Hampton Mall Drive

Capitol Heights, MD 20743

(503) 919-0748

georg.webb@gmail.com